```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
GRAMERCY WRECKING AND                                       :
ENVIRONMENTAL CONTRACTTORS,                                 :      **MEMORANDUM**
                                                            :      **DECISION AND ORDER**
                            Plaintiff,                      :
                                                            :      17-cv-7101 (BMC)
              - against -                                   :
                                                            :
TRUCKING EMPLOYEES OF NORTH                                 :
JERSEY WELFARE FUND, INC. and                               :
TEAMSTERS LOCAL 560,                                        :
                                                            :
                            Defendants.                     :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Contrary to both parties' contentions, the issue in this case is not whether petitioner should be deemed an "employer" under ERISA, 29 U.S.C. § 1381(a), exposing it to withdrawal liability for benefit contributions petitioner would have made had the parties' Job Site Agreement ("JSA") continued. At least, that is not the issue yet. Rather, the threshold issue is whether the JSA, by its reference to a Collective Bargaining Agreement ("CBA") containing an arbitration clause, incorporates that arbitration clause so that the issue of whether petitioner has withdrawal liability is for an arbitrator to decide. I hold that the arbitration clause controls, and since respondents have invoked it, I dismiss this action without prejudice to the parties' seeking resolution of the issue of withdrawal liability before an arbitrator.

## BACKGROUND

The second amended petition and an accompanying affidavit allege that plaintiff, a New York-based demolition contractor, is an "employer" as defined in the Labor Management Relations Law ("LMRA"), 29 U.S.C. § 152(2). Respondent Fund is a pension plan as defined by

ERISA, and respondent Local 560 is a New Jersey-based union local that falls under the definition of a labor organization in LMRA §§142(3) and 152(5).

Petitioner was hired as a subcontractor to do a wrecking/demolition job at the Meadowlands-Giant Stadium. Petitioner began the job in 2007 and completed it in 2012. At some point during the job, the general contractor advised petitioner that pursuant to Local 560's collective bargaining agreement with the general contractor, petitioner had to use Local 560 members to perform the demolition work. Petitioner was not a signatory to that CBA because as a New York-based contractor, it rarely undertakes work in New Jersey.

Petitioner's President, Vincent Parziale, met with Anthony Valdner, the President of Local 560, to discuss the problem. Parziale told Valdner that petitioner would not sign a CBA. Valdner suggested a "job site agreement" instead. He told Parziale that under such an agreement, petitioner would not be signing with Local 560. Rather, petitioner's association with Local 560 would be related only to the Meadowlands project, and only for the limited period of the project. Based on those representations, Parziale signed the JSA on behalf of petitioner.

The JSA is very short, less than a page on the letterhead of Local 560. It recites that it is an agreement between petitioner and Local 560. It further provides that petitioner

> recognizes [Local 560] as the Collective Bargaining Agent for all employees employed by [petitioner] at its Meadowlands Site/Stadium job site who are performing work covered [by] the work jurisdiction clause of the Master Agreement with the Associated General Contractors of the State of New Jersey, which is incorporated herein by reference.
>
> [Petitioner] has received from [Local 560] a copy of its current Collective Bargaining Agreement of the Associated General Contractors of the State of New Jersey and agrees to abide by all terms and conditions of employment for its employees, as set forth in the said Agreement and any successor agreements, to pay the wage rates for the various classifications of employment, as set forth therein, to make contributions to the Welfare and Pension funds for various fringe benefit plans, further provided in said Agreement or any successor agreements . . .

2

. This Agreement is effective as of the date above set forth and shall remain in full force effective until such time as the job described above, which this Agreement covers, is completed.

Sections 16A and 17A of the CBA set forth the escalating fringe benefit contribution rates based on hours of work that a signatory of that Agreement must make on behalf of each covered employee. Section 12 is an arbitration clause, which covers "any dispute between the Employer and employees, or the Employer and the Union . . . concerning any term or condition of employment, or otherwise." Section 18 provides that if any employer fails to pay required contributions, then the Fund is entitled to interest on those amounts plus the costs of collection, including auditing and legal fees.

During the Meadowlands job, petitioner hired truck drivers who were members of Local 560 to drive a water truck for the general contractor. In addition to salary, petitioner contributed $71,068.62 to the Fund through 2011 on account of the hours that these employees worked.

On June 28, 2017, approximately five years after completion of the Meadowlands job, the Fund sent a Demand for Withdrawal Liability of $622,275 to petitioner. The notice was sent pursuant to 29 U.S.C. § 1381(a), which provides that "[i]f an employer withdraws from a multiemployer plan . . . then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability." In general, the amount of withdrawal liability is the employer's proportionate share of the plan's unfunded liabilities as determined by a statutory formula. See 29 U.S.C. § 1391. In addition, 29 U.S.C. § 1401 requires arbitration of any disputes regarding withdrawal liability.

Contending that it is not an "employer" under ERISA and that it never agreed to withdrawal liability at the expiration of the Meadowlands JSA, petitioner commenced this action. The second amended petition has four claims for relief: (1) for a declaratory judgment that

3

petitioner is not an "employer" as defined in Section 515 of ERISA, 29 U.S.C. § 1145, or a party to the CBA, or any multi-employer plan agreement with Local 560, and any contributions it owed were only those generated by the work of its employees on the Meadowlands job, which it has paid; (2) a claim that Local 560 is equitably estopped from seeking withdrawal liability because Valdner represented that petitioner would not incur obligations to the Fund beyond the period of the Meadowlands job; (3) a claim that because the Fund has let other employers, who were covered under the CBA, withdraw from or cease making contributions to the Fund without penalty, the Fund is equitably estopped from seeking such liability from petitioner; and (4) a claim for indemnification by Local 560 if petitioner has withdrawal liability to the Fund, based on Valdner's representation that it would have no liability beyond the term of the JSA.

The Fund and Local 360 have moved to dismiss the second amended petition under Rule 12(b)(6).

## DISCUSSION

The initial question before the Court is which tribunal should decide whether petitioner is subject to withdrawal liability. In failing to isolate this argument, petitioner's argument ignores a step, and the Fund's motion conflates two steps. Petitioner wants the Court to determine that it has no withdrawal liability. The Fund first contends that by signing the JSA and its incorporation by reference of the CBA, petitioner became liable for withdrawal liability. It then contends petitioner's withdrawal liability has to be decided by an arbitrator.

One wonders what the Fund wants the arbitrator to decide if the Fund is asking this Court to determine whether petitioner has withdrawal liability, as it appears to be. Perhaps the Fund is advancing the idea that petitioner may challenge the calculation of withdrawal liability before an

4

arbitrator, but not the fact that it has incurred some amount of liability. If so, that argument places the cart before the horse.

If the parties have entered into a binding arbitration agreement to litigate the issue of whether petitioner has withdrawal liability, then this Court has no role in deciding that issue. The arbitration clause in the CBA certainly appears broad enough to encompass it: whether petitioner has withdrawal liability is a dispute between the "Employer and the Union," concerning whether the employment of Local 560 members on the Meadowlands job triggered withdrawal liability. Had petitioner signed the CBA, there would be no question about this. The question is whether petitioner signed on to the arbitration clause by signing the JSA.

"Whether an extrinsic document is deemed to be incorporated by reference is a matter of law." Sea Trade Co. v. FleetBoston Fin. Corp., No. 03-cv-10254, 2007 WL 1288592, at *4 (S.D.N.Y. May 1, 2007) (citing Camferdam v. Ernst & Young Int'l, Inc., No. 02-cv-10100, 2004 WL 307292, at *4 (S.D.N.Y. Feb. 13, 2004) (further citation omitted). "Under New York law, an extrinsic document is deemed to be incorporated by reference only when the agreement specifically references and sufficiently describes the document to be incorporated, such that the latter 'may be identified *beyond all reasonable doubt*.' " Id. (quoting PaineWebber, Inc. v. Bybyk, 81 F.3d 1193, 1201 (2d Cir. 1996)) (emphasis in Bybyk; further citation omitted).[1] A general reference to another document is insufficient as a matter of law to incorporate that other document into the subject agreement or contract. See Sea Trade Co., 2007 WL 1288592, at *4.

---

[1] An argument could be made that the JSA should be interpreted according to New Jersey law, since the work was performed there and both defendants are located there. The above analysis would not change because, as is relevant here, there is no material difference between the approaches in New York and New Jersey to the incorporation of extrinsic documents. See generally Bacon v. Avis Budget Grp., Inc., No. CV165939, 2017 WL 2525009, at *7 (D. N.J. June 9, 2017).

5

To the contrary, "[i]t must be clear that the parties knew of and consented to the terms to be incorporated by reference for these terms to be valid." Creative Waste Mgmt. v. Capitol Envtl. Servs., Inc., 429 F. Supp.2d 582, 602 (S.D.N.Y. 2006) (citing Bybyk, 81 F.3d at 1201; additional citation omitted).

The JSA could not be any clearer that it incorporates the CBA. The JSA expressly references the JSA. It recites that petitioner received a copy of the JSA. It expressly adopts "all terms and conditions of employment for its employees, as set forth" in the CBA. One of those terms and conditions is that any dispute between petitioner and Local 560 arising out of their relationship would be subject to arbitration. Petitioner claims that this contractual language does not include withdrawal liability based on its discussions with Local 560, but whether it does or not, petitioner has advanced no argument suggesting that it did not agree to arbitrate that issue. Indeed, although petitioner recounts the discussions that might prelude withdrawal liability, it nowhere claims that the parties had any agreement to avoid the arbitration clause.

Instead, petitioner makes the internally inconsistent argument that its "signing of the JSA did not constitute an agreement to arbitrate all disputes, as the JSA pertained only to the Meadowlands job." That may be correct, insofar as it goes. It would mean that if petitioner does another job within Local 560's jurisdiction, neither the JSA itself nor its incorporation of the CBA would require arbitration of any dispute arising from that other work. But the Fund's withdrawal liability demand here was determined "based on Gramercy's participation and contribution history with the Pension Fun[d]." The demand specifically notes petitioner's relationship with Local 560 ended on May 31, 2012, and that the liability is computed as of the prior calendar year, 2011. Since petitioner has no participation or contribution history outside of

6

the Meadowlands job, the current dispute relates only to the Meadowlands job. It is squarely within the disputes that petitioner agreed to arbitrate.

Although petitioner agreed to arbitrate any disputes arising out of the Meadowlands job by reason of the JSA's incorporation of the CBA, this does not mean it also agreed to pay withdrawal liability. Its argument, in essence, is that it did not "withdraw" any more than Local 560 "withdrew"; rather, the JSA ended pursuant to its express terms. That argument is supported by language in the JSA itself, which provides that any obligations petitioner has towards Local 560 continue only "until such time as the job described above, which this Agreement covers, is completed." It is further supported by the JSA's express recognition that Local 560 was the authorized bargaining representative only for the Meadowlands job. This means that if petitioner wanted to use Local 560 members for some other job, and Local 560 required Fund contributions as a condition of that, petitioner would have no obligation to recognize Local 560 as the bargaining representative, or pay contributions, unless it signed onto the CBA or another job site agreement.[2]

At the very least, there is an arguable conflict between the expressly limited financial scope of the JSA and the continuous obligation set forth in the CBA. The factfinder may well need to ascertain the contractual intent of the parties at the time they entered into the JSA, using contemporaneous indicia of intent (like conversations between them at the time they entered into the JSA) and other extraneous evidence.[3]

---

[2] 29 U.S.C. § 1381, requiring payment of withdrawal liability, does not help respondents. The statute first requires a determination that the employer has withdrawal liability, which an arbitrator has not yet determined. See 29 U.S.C. §§ 1382, 1401.

[3] The Fund's reliance on dictum in a footnote in Sheet Metal Workers Intern. Ass'n Local Union No. 27. AFL-CIO v. E.P. Donnelly. Inc., 673 F. Supp. 2d 313, 327 n. 22 (D.N.J. 2009), is misplaced. The Project Labor Agreement at issue in that case bore virtually no resemblance to the JSA here. That Project Labor Agreement was nearly 40 pages long and contained many of the terms that would be in a collective bargaining agreement. See id. No. 07-cv-3023, at

7

Petitioner also has the attractive equitable argument that there is something funny going on here. It paid $71,068.62 in contributions in 2012. It received no complaint from the Fund that its contributions were inadequate, nor any claim for withdrawal liability. Then five years later, out of the blue (if one accepts the allegations in the petition), it received a demand for nearly ten times the amount that it had contributed. There is at least an argument that this belated demand reflects an accountant's opportunistic realization rather than the intent that the parties had when they entered into the JSA or the requirements of ERISA.

These points, however, are not for this Court to decide. Petitioner has not disputed that the CBA contains an arbitration clause that covers any disputes arising out of its work on the Meadowlands. This is one.

## CONCLUSION

Respondents' motions to dismiss are granted, without prejudice to resolving the issue of whether petitioner has withdrawal liability and, if so, the extent of it, before an arbitrator pursuant to the arbitration procedure in the CBA. The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

                                                                U.S.D.J.

Dated: Brooklyn, New York
        May 30, 2018

---

dkt. 28-5 (D.N.J. filed Sept. 21, 2007). It bears little resemblance to the half-page, back-of the-envelope JSA in the instant case.